# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2124 | **DATE** | 11/21/2001 |
| **CASE TITLE** | Frank Williams vs. Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [19-1] is granted. Defendant's motion for summary judgment [21-1] is denied and the ALJ's decision is vacated and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. Section 405(g) for further proceedings consistent with this opinion. The Commissioner is ordered to re-adjudicate Claimant's claim of disability beginning at step four.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 21 2001 date docketed | |
| | Notified counsel by telephone. | | 27 |
| | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 11/21/2001 date mailed notice | |
| DK | courtroom deputy's initials | DK6 mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 2124 |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY G. MASSANARI[1], | ) | Magistrate Judge Morton Denlow |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for a review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff, Frank Williams ("Claimant" or "Williams"), Supplemental Security Income ("SSI") under the Social Security Act ("SSA"), 42 U.S.C. § 1381 *et seq.* Williams claims he has been disabled since January 1, 1997 due to high blood pressure, asthma, diabetes, and lower back disorder.

Williams seeks judicial review of the Commissioner's final decision. The matter comes before this Court on cross-motions for summary judgment. The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative

---

[1] On March 29, 2001, Larry G. Massanari became Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Larry G. Massanari is automatically substituted for Kenneth S. Apfel as the Defendant in this civil action.

Law Judge ("ALJ") that Williams was not disabled under the SSA since January 1, 1997. For the reasons set forth below, the Court reverses the ALJ's decision and remands the case to the Commissioner for further proceedings consistent with this opinion.

## I. PROCEDURAL BACKGROUND

On June 25, 1996, Williams applied for SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, claiming disability due to high blood pressure, asthma, diabetes, and lower back disorder. (R. 157). Although Williams was receiving benefits for drug addiction and/or alcoholism ("DAA") at that time, he was to be terminated from those benefits effective January 1, 1997 pursuant to Public Law 104-121, 42 U.S.C. § 405. (R. 160). The Commissioner denied Williams' application both initially and upon reconsideration. (R. 165, 166).

Williams requested a hearing before an ALJ and such a hearing was held on April 30, 1998 before ALJ Richard Pearson. (R. 35-156). Williams was represented by counsel at the hearing, and both a medical expert ("ME") and a vocational expert ("VE") testified. On August 12, 1998 the ALJ rendered his decision denying Williams' application. (R. 18-29).

Williams filed a request for review of the ALJ's decision by the Commissioner's Appeal Council, which was denied, leaving the ALJ's decision the final decision of the Commissioner. (R. 9). On March 27, 2001 Williams filed a request for judicial review pursuant to 42 U.S.C. § 405(g), which is currently before this Court.

2

## II. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. Of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support his findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815 n.1 (1992). The Act gives a court the power to enter a judgment, "affirming, modifying, or reversing

the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ESTABLISHING A DISABILITY

In order to be entitled to SSI under Title XVI of the Social Security Act, the Claimant must establish a "disability" under the Act. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 1997). To establish a "disability" the Claimant must show that he is suffering from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last" for at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). Additionally, an individual shall be considered disabled, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work..." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Regulations provide a five-step process to determine whether the Claimant has established a "disability." 20 C.F.R. § 404.1520(a). The process is sequential; if the ALJ finds that the Claimant is disabled or is not disabled at any step in the process, the analysis ends. *Id.* In the first step, the ALJ considers whether the Claimant is working and whether such work is "substantial gainful activity." *Id.* at § 404.1520(b). If the Claimant is working, the ALJ will find he is not disabled irrespective of medical condition, age, education, and work experience. *Id.*

4

If the Claimant is not working, the ALJ will address step two: whether the Claimant has an impairment or combination of impairments that is "severe." *Id.* at § 1420(c). A "severe" impairment is one which "significantly limits [the Claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, carrying out, and remembering simple work instructions, and using judgment. *Id.* at § 404.1521(b). The ALJ is to consider the combined effect of multiple impairments "without regard to whether any [single] impairment, if considered separately, would be of sufficient severity." *Id.* at § 404.1523; 42 U.S.C. § 423(d)(2)(B). If the ALJ finds the Claimant does not have a severe impairment, the Claimant is found not to be disabled and the sequential analysis ends. 20 C.F.R. at § 404.1520(b).

If the ALJ finds the Claimant's impairment is severe, the ALJ considers step three: whether the severe impairment meets any of the impairments listed in Appendix 1 of Subpart P of Regulations No. 4. *Id.* at §1420(c). If the Claimant's impairment meets or equals any impairment listed in the regulations, the ALJ will find the Claimant disabled.

If the impairment does not meet any listed impairment, the ALJ moves to step four. *Id.* at § 1420(e). Step four involves a consideration of the Claimant's "residual functional capacity" and the "physical and mental demands" of the past relevant work experience. *Id.* A Claimant's residual functional capacity ("RFC") is what that person is able to do,

despite his or her limitations. *Id.* at § 404.1545. If the Claimant is still able to perform work that he had performed in the past, the ALJ will find that the Claimant is not disabled. *Id.* at § 1420(e).

If the Claimant's impairment is so severe that he is unable to perform past relevant work, the burden shifts to the Commissioner in step five to show that the Claimant, considering his age, education, past work experience, and RFC, is capable of performing other work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Brewer*, 103 F.3d at 1390.

## IV. THE ALJ DECISION

The ALJ found Williams satisfied step one because he was unemployed and not engaged in substantial gainful activity. (R. 20, 27). The ALJ determined that Williams satisfied step two because he suffered from a number of severe impairments including: insulin-dependent diabetes mellitus; hypertension; a respiratory impairment (variously diagnosed as asthma or bronchitis); lower back pain as the residual effect of a herniated disc; liver damage from hepatitis C infection and prolonged drug and alcohol use; reduced sensation in the hands and legs (possibly peripheral neuropathy); and active polysubstance dependence. (R. 24). At step three, the ALJ determined that these impairments do not meet or equal any listing in the Listing of Impairments, which brought the ALJ to step four. *Id.*

Step four involves Williams's residual functional capacity. The ALJ determined

Williams had the residual functional capacity to perform the physical exertional and non-exertional requirements of work at the light level of exertion, with the exception of not being able to stand or walk more than four hours in a work day and no more than one hour continuously, performing postural activities only occasionally, no climbing or engaging in work requiring fine hand manipulations. (R. 25). Although the ALJ found Williams to have the ability to perform some light work, the ALJ found that he could not return to his former profession as a barber in a normal competitive environment. *Id.*

Therefore, the ALJ went on to step five to determine Williams's capability of performing other work within the national economy. The ALJ, using the VE's testimony and Rule 202.11 of the Medical-Vocational Guidelines, determined Williams would be qualified for a significant number of jobs in the Chicago metropolitan area including; assembly (16,000 jobs), hand packager (10,000 jobs), inspector (8,500 jobs), security monitor (3,000 jobs), and cashier (5,000 jobs), and, therefore, concluded Williams was not disabled. (R. 27).

## IV. ANALYSIS

Williams asserts the ALJ's decision was not based on substantial evidence and was flawed by legal error. Specifically, Williams contends the ALJ (1) incorrectly gave weight to the testimony of the VE and ME when their testimony was not based upon the whole of the medical evidence submitted by Claimant, (2) failed to credit the medical evidence supporting Claimant's back condition, (3) neglected to include the physical restrictions

7

caused by Claimant's hepatitis C in his RFC, and (4) did not retrieve Claimant's prior SSA file.

## A. IT IS THE ALJ's DUTY TO DEVELOP A FULL AND FAIR RECORD

Claimant's first argument relates to the fact that the ME, during the hearing, specifically qualified his testimony due to missing medical records and evidence from the Claimant's primary treating physician during the period of alleged disability.[2] (R. 82-83). The ALJ noted this and said, "ideally it would be good to have them now for *you to evaluate.*" (R. 83 emphasis added). The ALJ proceeded with the hearing and allowed the ME to testify based upon the available, albeit limited, records. (R. 83-112). At the hearing, the ALJ decided to hold the record open to obtain medical records from Claimant's treating physician and hospitals. (R.136). Claimant's counsel requested the ALJ to forward the additional records to the ME. (R.336).

However, after the ALJ's receipt and review of the new records, the ALJ did not forward the records to the ME to solicit his further opinions. (R. 25). The ALJ claimed it was unnecessary to forward the records because he was "able to assess the evidence to form my own conclusions regarding the claimant's functional abilities." (R. 26). This Court respectfully disagrees with the ALJ's decision not to forward such evidence to the ME for the following reasons.

Because of the non-adversarial nature of a SSA proceeding, the ALJ is responsible

---

[2] Although there was some discrepancy during oral arguments as to whether the records, R. 292-335, were present during the hearing, both sides later agreed they were not.

8

for developing a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Pursuant to this objective, in determining Claimant's RFC the ALJ must base the conclusion on "all of the evidence the ALJ has, including any statements...provided by treating or examining physician, [or] consultative physicians..." and the ALJ must give greater weight to a medical opinion based upon relevant evidence such as medical signs and laboratory findings. 42 U.S.C. § 416.946, 20 CFR 416.927(d)(3). Additionally, "the weight given a physician's statement depends upon the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques." *Knight*, 55 F.3d at 314. Although the ALJ affirms his reliance upon the Claimant's treating physician and the ME in determining the Claimant's RFC, he incorrectly and unfairly relied on an incomplete ME opinion. (R. 25). Therefore, the ALJ's RFC determination at step four was not supported by substantial evidence.

More importantly, as a result of the ALJ's RFC determination, step five of the analysis was affected. At step five the burden shifts to the Commissioner to show that the Claimant is capable of performing work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Additionally, the "hypothetical question upon which vocational testimony is predicated must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). In the instant case the ALJ properly called a VE to testify. However, the ALJ posed a hypothetical to the VE based upon a RFC which was based on incomplete

9

medical evidence, and, as a result, the VE's testimony was inaccurate and the burden was not satisfied.

## B. ALJ CROSSED THE LINE BETWEEN JUDGE AND MEDICAL DOCTOR

The Seventh Circuit has cautioned ALJs against succumbing to the temptation to play doctor and making their own independent findings concluding, "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir., 1990). The Claimant's records from his regular treating physician submitted post-hearing were significant in number (approximately 50 pages), included technical x-ray and blood reports, and spanned over the relevant time period (1997-1998). (R. 292-335, 336-392). These facts illustrate the notion that their omission would create a gaping hole in the testimony of the ME and consequently the VE. Furthermore, the ALJ's sole examination and interpretation of such crucial records in an attempt to fill this hole crosses the line between judge and medical doctor.

Although it is not always necessary for an ALJ to call an ME to evaluate medical evidence, this ALJ did so, creating a presumption an ME was necessary. 20 C.F.R. § 404.1526. When the ALJ interpreted the post-hearing records without the assistance or opinion of the ME, he was required to justify such an action and sufficiently articulate his assessment of the evidence to assure the Court that the ALJ considered the important evidence and to enable the Court to trace the path of the ALJ's reasoning. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). The ALJ explained that the records indicated

nothing new and they even noted an improvement of Williams' back pain. (R. 26). However, this reason is insufficient due to the fact that relief from pain does not explain the status of the underlying condition, namely diskogenic degenerative disease. This, "is precisely this type of decision -- made within the context of an extremely technical and complex field -- that courts should leave in the hands of expert administrators." *Wilkins v. Sullivan*, 889 F.2d 135, 140 (7th Cir. 1989) (commenting on an emphysema operation that relieved pain, but not the disease itself). Although the ALJ provides a reason, his reasoning is insufficient and he should have stood by his word and referred the records to the ME.

For example, the ALJ neglects to mention that Dr. Zaman stated Claimant would need to take unscheduled, as needed breaks during the day, and that Claimant would need to be able to shift positions from standing, sitting and walking at will. (R. 393-397). The ALJ does not explain why his RFC did not reach the same conclusion as the treating physician on this important point.

Similarly, although the ALJ found that Claimant cannot work at a pace competitive work demands (R. 25), the ALJ found Claimant capable of handling assembler, inspector and hand packager jobs which the VE testified were "fairly quick paced." (R. 125). Although the ALJ found that Claimant could not perform tasks involving fine manipulation with his hands (R. 27), the ALJ found Claimant could perform work as a cashier. The record does not support the ALJ's conclusion in light of Claimant's need to

take unscheduled breaks, his limitations on the pace of his work, and his limitation in his hand motor skills.

Claimant's second and third arguments are encompassed within the first. These arguments claim the ALJ failed to credit the medical evidence of the Claimant's specific conditions in regards to his back pain and hepatitis C. However, the evidence pointing to these conditions was contained in the post-hearing records, and, therefore, must be addressed upon remand. Claimant's fourth argument pertains to the ALJ's failure to obtain Claimant's prior record. The ALJ is not required to obtain or use a claimant's prior file and is entitled to exercise its discretion to determine how much evidence is necessary to evaluate a particular case. *Kendrick v. Shalala*, 998 F.2d 455, 457 (7th Cir. 1993). On remand, Claimant may submit such information to the record or request that it be submitted.

## V. CONCLUSION

The ALJ used a ME at the hearing, however, failed to supply the ME with all the necessary materials to render a full and accurate medical opinion. The ALJ relied upon the ME's incomplete assessment to determine the Plaintiff's RFC which affected the hypothetical posed to the VE and unfairly colored the ALJ's final decision. As a result, **Plaintiff's motion for summary judgment is granted, Defendant's motion for summary judgment is denied, and the ALJ's decision is vacated and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Commissioner is ordered to re-adjudicate Claimant's claim of disability beginning at step four.**

SO ORDERED THIS 21st DAY OF NOVEMBER, 2001.

*Morton Denlow*
MORTON DENLOW
United States Magistrate Judge

**Copies mailed to:**

Frederick J. Daley, Ltd.
727 South Dearborn St., Suite 613
Chicago, IL 60605
**Attorney for Plaintiff**

Preston L. Pugh
Assistant U. S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

Henry S. Kramzyk
Assistant Regional Counsel
Social Security Administration
200 West Adams St., 30th Floor
Chicago, IL 60606
**Attorneys for Defendant**